David GRAHAM, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–995.

District of Columbia Court of Appeals.

Argued Sept. 30, 2010.

Decided Feb. 10, 2011.

1160

Joanne Vasco, Hyattsville, MD, for appellant.

Veronica M. Sanchez, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, and David Gorman, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, KRAMER, and BLACKBURNE–RIGSBY, Associate Judges.

KRAMER, Associate Judge:

David Graham appeals from his convictions for first-degree murder while armed, possession of a firearm during a crime of violence ("PFCV"), and carrying a pistol without a license ("CPWL"). Appellant argues that the jury lacked sufficient evidence to sustain the convictions, that the trial court erred by improperly admitting hearsay evidence, that the trial court erred

by giving the jury a flight instruction, and that the trial court's flight instruction itself was erroneous. We affirm.

## I. Factual Background

On December 12, 2001, Kamau Walker was shot to death in his home in northwest Washington. The government's evidence showed that, prior to the shooting, Graham and Walker had at least one altercation, and on the day of the murder, at least two altercations during which Walker threatened Graham. At trial, the government introduced testimony from a number of witnesses, including Graham's friend Derrick McCray, and Walker's friends Jose Henriquez and Barrington Fowler. Because the testimony was at times contradictory, we summarize the relevant testimony of the key witnesses.

Henriquez testified that prior to the shooting, he was in the house with Graham, Fowler and Walker. Minutes after Graham arrived, Henriquez went to the bathroom, where he heard Walker speak with someone, then heard "firecrackers." When he emerged, Walker was dead, and he fled to get help. He testified that he encountered Fowler by the front door near the stairs, and told him that Walker was "on the floor." Henriquez testified that he believed that the shooter fled via the back door. That night, while giving a statement to police, Henriquez saw Graham across the street and told officers that he "might be the guy."

Fowler testified after Henriquez. He testified that he was outside the home when the shooting occurred, and while running into the home to investigate, met Henriquez in front of the house, where Henriquez, hysterical, told him "Dave [Graham] shot your friend, Kamau [Walker]." Fowler testified that despite know-

ing that Henriquez was in the house when the shots were fired, he did not believe Henriquez was the shooter. Fowler also testified that after the shooting, he saw Graham walking quickly down the street, in different clothing than he had worn earlier. The night of the shooting, Fowler made a report to the police. At trial, he testified that he told the police the shooter was "Kamau's [Walker's] friend, Dave [Graham]."

McCray testified that on the evening of the shooting, after an altercation with Walker, Graham stated that he should "snuff" Walker.[1] McCray testified that he later followed Graham into Walker's house, where he witnessed Walker's shooting. According to McCray, he was standing behind Graham, who was facing Walker, who in turn was in front of Fowler, when Walker was shot. McCray was behind Graham, thus unable to see whether or not he had anything in his hands. While McCray did not specifically see Graham shoot Walker, he testified that Fowler was definitely not shooting, and therefore he knew that Graham was the shooter. McCray further testified that a few days after the shooting, he met Graham in a parking lot in the northeast part of the city to give Graham clothes from Graham's apartment. Other witnesses testified that Graham was avoiding the area because it was "hot."

The trial judge instructed the jury, including an instruction allowing the jury to consider flight evidence. The jury convicted on all counts, and this appeal followed.

## II. Sufficiency of the Evidence

 Graham argues that the evidence presented at trial could not have sufficiently identified him as the shooter.[2] Where "identification is at issue, we must focus on

---

1. McCray testified that "snuff" is "a slang word that we use for kill."

2. Graham does not argue that the evidence adduced at trial was insufficient to find premeditation, that the murder weapon was a

the reliability of the identification. If . . . there was only one eyewitness to the crime, 'the test is whether a reasonable person could find the identification convincing beyond a reasonable doubt, given the surrounding circumstances.' " *Lancaster v. United States*, 975 A.2d 168, 171–72 (D.C.2009) (quoting *Beatty v. United States*, 544 A.2d 699 (D.C.1988)). "And we of course view the evidence in the light most favorable to the government, 'giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence.' " *Id.* (quoting *Williams v. United States*, 881 A.2d 557, 566 (D.C.2005)).

Graham's primary contention is that the testimony provided by the various witnesses at trial was too contradictory to sufficiently identify him as the shooter. Furthermore, he emphasizes that McCray, the only eyewitness to the shooting, changed his account of events and was influenced by a plea agreement with the government. Nonetheless, viewing the evidence in the light most favorable to the government, we find that the evidence was sufficient to identify Graham as the shooter.

■ Contradictions between the testimony from various witnesses is unremarkable, and in and of itself is not enough to reverse a jury verdict. *See Freeman v. United States*, 912 A.2d 1213, 1220 (D.C. 2006) ("The fact that there may be some inconsistencies between the testimony of one witness and another is therefore of no consequence. The jury has the 'right to assess credibility and to draw reasonable inferences from the evidence it has heard.' " (quoting *Nelson v. United States*, 601 A.2d 582, 593 (D.C.1991))). "[I]nconsistencies in the evidence affect only its weight, not its sufficiency, and are in any event for the jury to resolve." *Id.* (quoting *Gibson v. United States*, 792 A.2d 1059, 1066 (D.C.2002)).

The testimony of McCray alone, if credited by the jury, was sufficient to convict Graham. McCray testified that on the day of the murder, he heard Graham say that "he should go snuff" Walker. McCray also testified that he witnessed the shooting. While McCray could not testify that he saw Graham holding a gun, he testified that he was standing behind Graham as Walker was shot, and that the only other person present in the room, Fowler, was "definitely not shooting." [3] Based on his observations, he concluded that Graham shot Walker.

■ We have repeatedly held that the testimony of one witness is sufficient to sustain a conviction. [4] *See Gibson, supra*, 792 A.2d at 1066 ("[T]he testimony of a single witness is sufficient to sustain a criminal conviction, even when other witnesses may testify to the contrary."); *see also (Kevin) Hill v. United States*, 541 A.2d 1285, 1287 (D.C.1988) ("A conviction based upon a single eyewitness identification will not be disturbed if a reasonable juror could find the circumstances surrounding the identification to be convincing beyond a reasonable doubt."). We conclude that a reasonable person could find the identification convincing beyond a reasonable doubt.

■ Graham disputes McCray's credibility, arguing that McCray initially stat-

---

handgun, or that appellant was not licensed to carry a handgun.

**3.** Both Fowler and Henriquez testified that Henriquez was in the bathroom when the shooting occurred.

**4.** We note that with the admission of Fowler's testimony, discussed in Section III, *infra*, this was not a single witness case.

ed that he was not present during the shooting,[5] and that neither of the other witnesses placed him on the scene. In addition, Graham argues that McCray's testimony was influenced by a plea agreement with the government. None of these arguments are sufficient for us to hold McCray's testimony inherently incredible. Credibility is normally for the jury to determine. *See Curry v. United States*, 520 A.2d 255, 263 (D.C.1987). Inherent incredibility "is a very stringent test which has been met in only a tiny number of cases," and is only invoked where

> testimony can be 'disprove[d] ... as a matter of logic by the uncontradicted facts or by scientific evidence' or when 'the person whose testimony is under scrutiny made allegations which seem highly questionable in the light of common experience and knowledge, or behaved in a manner strongly at variance with the way in which we would normally expect a similarly situated person to behave.'

*In re A.H.B.*, 491 A.2d 490, 496 n. 8 (D.C. 1985) (quoting *Jackson v. United States*, 122 U.S.App.D.C. 324, 329, 353 F.2d 862, 867 (1965)). We cannot conclude that McCray's testimony was inherently incredible. Graham offers no logical proof disputing McCray's testimony, and whether to credit McCray's testimony or the testimony of other witnesses who did not place him at the scene was a decision for the jury. *See Adams v. United States*, 883

A.2d 76, 85 n. 17 (D.C.2005) ("In any event, 'inconsistent or contradictory [evidence] is not enough to reverse [his] conviction, as such considerations are best left to the jury for determining credibility.' " (quoting *Graham v. United States*, 746 A.2d 289, 297 (D.C.2000))). Further, McCray's plea arrangement was disclosed to the jury, who were properly instructed on how to credit such testimony. *Cf. McCrimmon v. United States*, 853 A.2d 154, 165 n. 23 (D.C.2004) (declining to find a cooperating witness's testimony inherently incredible where the plea was disclosed and credibility determinations were left to the jury).

Because the identification evidence was sufficient and the witness was not inherently incredible, we hold that the evidence adduced at trial was sufficient to support the verdict.

### III. Admission of Fowler's Testimony

■ ■ ■ Graham also assigns error to the trial court's admission of Fowler's conversation with the police the night of the murder. The application of a hearsay exception is a question of law that we review *de novo*. *(Larry) Brown v. United States*, 840 A.2d 82, 88 (D.C.2004); *see also (Henry) Brown v. United States*, 881 A.2d 586, 599 (D.C.2005).

Graham argues that the trial court erred by allowing Fowler to testify on direct examination regarding his statements to police the night of the murder.[6] The exchange went as follows:

> Kamau [Walker]." That statement was properly admitted as an excited utterance, or alternatively, as a statement of identification. *See, e.g., Malloy v. United States*, 797 A.2d 687, 690 (D.C.2002) (describing the admission of an excited utterance); *(Larry) Brown, supra*, 840 A.2d at 88 ("The prior identification exception to the hearsay rule allows the admission of out-of-court statements through the testimony of either the identifier *or a third party who was present when the identification*

---

**5.** Initially, McCray reported to police that he was not present for the shooting. He eventually changed his story, asserting that he did so to better comply with a plea agreement he had with the government that required him to truthfully report any crimes he witnessed. At trial, the defense impeached McCray with both his prior inconsistent statement and his plea arrangement.

**6.** We note at the outset that Graham does not dispute Fowler's repetition of Henriquez's statement, "Dave [Graham] shot your friend,

Q: Mr. Fowler, when you were down at the police station did you tell the police who did this that night?

A: Yes I did.

Q: And who did you tell them did it?

A: Kamau's [Walker's] friend, Dave [Graham].

Over Graham's objection, the trial court admitted the statement as a prior statement of identification. *See* D.C.Code § 14–102(b)(3) (2001). On appeal, characterizing the testimony as a prior consistent statement,[7] Graham argues that its admission was improper because Fowler had not been impeached. *See Daye v. United States*, 733 A.2d 321, 325 (D.C.1999) ("Prior consistent statements may not be used to bolster an unimpeached witness." (quoting *Reed v. United States*, 452 A.2d 1173, 1179 (D.C.1982))). We find no merit in this claim.

■■■ "The prior identification exception to the hearsay rule allows the admission of out-of-court statements through the testimony of either the identifier or a third party who was present when the identification was made." *(Larry) Brown, supra*, 840 A.2d at 88 (citing *Morris v. United States*, 398 A.2d 333, 336 (D.C.1978); *Clemons v. United States*, 133 U.S.App. D.C. 27, 39–40, 408 F.2d 1230, 1242–43 (1968)). Codified in D.C.Code § 14–102(b)(3) (2001), the exception provides that "[a] statement is not hearsay if the declarant testifies at the trial or hearing

and is subject to cross-examination concerning the statement and the statement is ... an identification of a person made after perceiving the person. Such prior statements are substantive evidence." Descriptions of an event itself are admissible only to the extent necessary to provide context to the identifications. *See Lewis v. United States*, 996 A.2d 824, 829–30 (D.C. 2010) (citing *Porter v. United States*, 826 A.2d 398, 410 (D.C.2003)). We admit prior statements of identification "because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." *Morris, supra*, 398 A.2d at 337 (citations omitted).

■■■ Where a statement fits within the prior identification exception, it is properly admitted as substantive evidence, and is not an impermissible prior consistent statement. *(Henry) Brown, supra*, 881 A.2d at 600 ("Although [appellant] argues that it was improper to use the consistency of [prior] descriptions to bolster [a witness's] in-court testimony in the absence of a prior attack on that testimony, we see nothing inherently wrong with using prior statements of identification in this way.") Here, the statement fits the exception, and was properly admitted as a prior statement of identification. Fowler's statement to the police identified Graham as the shooter[8] and Fowler, the declarant, was available for cross examination.[9] *See,*

*was made.")* (emphasis supplied) (citations omitted).

7. *See* D.C.Code § 14–102(b)(2) (2001) ("A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive.").

8. While Fowler's written statement to police did not use the name "Dave," he maintains that he told the police Graham was the shooter. The defense impeached Fowler on this discrepancy on cross examination.

9. Graham mentions that Fowler was not an eyewitness to the shooting; the basis for his statement to the police was Henriquez's statement "Dave [Graham] shot your friend, Kamau [Walker]." In some circumstances, a hearsay statement, standing alone, may not properly form the basis for a statement of

*e.g. Lewis, supra,* 996 A.2d at 829 (allowing statements made to police and prosecutors to be introduced as prior statements of identification where the statements provided names of the accused and the declarant was available for cross examination); *Taylor v. United States,* 866 A.2d 817, 822–23 (D.C.2005) (admitting prior statements naming and describing the accused, where the statement was not detailed and the declarant was available for cross examination); *(Randolph) Williams v. United States,* 756 A.2d 380, 386–87 (D.C.2000) (admitting a victim's statement to a friend, where the statement identified the accused and the victim was available for cross examination).

## IV. The Flight Instruction

■ The trial judge issued this flight instruction, over Graham's objection:

Now a person who hides after, who flees or hides after a crime has been committed or after he has been accused of a crime may be motivated by a variety of factors which are fully consistent with innocence. Flight or concealment does not create a presumption of guilt, nor does it necessarily reflect that the person has feelings of guilt. In addition, because innocent persons sometimes feel

guilty, such feelings do not necessarily reflect actual guilt.

On the other hand, you may consider flight or concealment as a circumstance tending to show feelings of guilt and you may also consider feelings of guilt as evidence tending to show actual guilt, but you are not required to do so. However, under no circumstances may you presume that a defendant is guilty, merely because he fled or concealed himself. If you find evidence of flight or concealment, you should consider and weigh such evidence along with all the other evidence in the case and give it the weight that you think it deserves.

The instruction is the standard "Red Book" instruction. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 2.44 (4th Ed. 2004).

■ "In reviewing a challenge to a jury instruction that was preserved at trial, the central question for this court is whether it is an adequate statement of the law, and whether it is supported by evidence in the case." *Wheeler v. United States,* 930 A.2d 232, 238 (D.C.2007) (citing *Leftwitch v. United States,* 251 A.2d 646, 649 (D.C.1969)). "This court reviews the trial court's decision to give a requested jury instruction for abuse of discretion,

identification. *See United States v. Berrios,* 132 F.3d 834, 838 (1st Cir.1998) (upholding the exclusion of a prior statement of identification where the basis for the witness's prior statement was the statement of another person, who was not available for examination at trial). However, assuming *arguendo* that Henriquez's statement formed the exclusive basis for Fowler's statement, no hearsay danger is present here because the defense was free to explore, and in fact did explore, the veracity of both Fowler's and Henriquez's statements through cross examination. *Cf. (Larry) Brown, supra,* 840 A.2d at 89 (upholding the introduction of a prior statement of identification based on medical records, admitted via a doctor who did not prepare the records herself, where the original declarant

was available for cross examination). Furthermore, Graham did not address the requisite basis or foundation of a statement of identification in his appeal, instead characterizing the statement as a prior consistent statement. Thus, we decline to reach the question of whether or not Fowler's statement to police had a sufficient foundation to be admitted as a prior statement of identification. *See Wagner v. Georgetown Univ. Med. Ctr.,* 768 A.2d 546, 554 (D.C.2001) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones ...." (quoting *United States v. Zannino,* 895 F.2d 1, 16 (1st Cir.1990))).

viewing the instruction[ ] as a whole." *Id.* (citing *Edwards v. United States,* 721 A.2d 938, 944 (D.C.1998)).

■ "A flight instruction is improper unless the evidence reasonably supports the inference that there was flight or concealment and that the defendant fled because of consciousness of guilt and actual guilt of the crime charged." *Scott v. United States,* 412 A.2d 364, 371 (D.C.1980) (citations omitted). Graham argues that the evidence in the case was insufficient to support the required inference, and as such the instruction was unduly prejudicial.[10] We disagree.

Evidence adduced at trial established that Graham left the area quickly after the murder, in different clothing than he had been wearing shortly before. McCray testified that after the incident, he did not see Graham in the neighborhood, and furthermore, that he traveled to another neighborhood to take Graham the clothes from Graham's apartment. This was corroborated by Graham's former girlfriend, who also testified to the grand jury that after the shooting, Graham avoided the neighborhood because it was "hot." [11] This evidence reasonably supports the inference required to issue the flight instruction. *See, e.g. Lloyd v. United States,* 806 A.2d 1243, 1252 (D.C.2002) (finding that evidence that the defendant changed clothes and returned to the scene was sufficient to support a flight instruction).

Graham emphasizes that other evidence produced at trial suggests he did not immediately leave the area, and that his reluctance to remain in the neighborhood was consistent with innocence. However, "[a] degree of ambiguity for flight evidence is acceptable; the standard instruction deals with the uncertainties by warning the jury that flight does 'not necessarily reflect' consciousness of guilt and 'may be motivated by a variety of factors which are fully consistent with innocence.'" *Comford v. United States,* 947 A.2d 1181, 1187 (D.C. 2008) (citation omitted); *see also (Curtis) Smith v. United States,* 777 A.2d 801, 808 (D.C.2001) (finding that conflicting explanations for flight are weighed by the jury). Furthermore, to the extent that some evidence suggested Graham did not immediately flee, "contradictions among witnesses at trial are inevitable and are matters for the jury to resolve as they weigh all the evidence." *Koonce v. United States,* 993 A.2d 544, 551 (D.C.2010) (quoting *Payne v. United States,* 516 A.2d 484, 495 (D.C. 1986)). We hold that because the evidence reasonably supported the inference that there was flight, and that the flight reflected consciousness of guilt, the trial court did not abuse its discretion by issuing the instruction.

## V. Adequacy of the Flight Instruction

■ Graham argues that the language of the flight instruction was improper because it did not clearly inform the jury that finding evidence of flight or concealment is a predicate to weighing such evidence.

■ To preserve a jury instruction issue for appeal, Superior Court Rule of

---

10. Graham also vaguely argues that the trial court erred by admitting the flight evidence in the first instance. Where a party generally raises an issue on appeal without supporting argument, we deem it abandoned. *See generally Bardoff v. United States,* 628 A.2d 86, 90 n. 8 (D.C.1993) (citing D.C.App. R. 28(a)(5) which requires briefs to contain "contentions of the appellant with respect to the issues presented, and the reasons therefore, with citation to the authorities, statutes and parts of the record relied on."). As such, we decline to address the admissibility of the evidence supporting the flight instruction.

11. Portions of Graham's former girlfriend's grand jury testimony were admitted to impeach her testimony at trial.

Criminal Procedure 30 requires a party to "object[ ] thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Super. Ct. Crim. R. 30. Graham did not object to the language of the instruction when it was given. When a party fails to object to an instruction in the manner required by Rule 30, we are limited to reviewing that instruction for "plain error." *(Henry) Brown, supra*, 881 A.2d at 593 (citing *Green v. United States*, 718 A.2d 1042, 1056 (D.C.1998)); *Williams v. United States*, 858 A.2d 984, 990–92 (D.C.2004). The "plain error" standard presents a high threshold. Appellant not only must establish "error," but also that the error is "plain" and that it "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Wilson v. United States*, 785 A.2d 321, 326 (D.C.2001).

The instruction given at trial included the sentence "*If* you find evidence of flight or concealment, you should consider and weigh such evidence along with all the other evidence in the case and give it the weight that you think it deserves." (emphasis supplied). Nevertheless, Graham argues that the instruction was flawed because that statement should be prefatory, as reflected in the revised 2008 instruction.[12] We disagree.

Graham relies on *Scott v. United States*, 412 A.2d 364 (D.C.1980), where we held that a flight instruction was inadequate where it did not instruct the jury that "it was not bound to consider the flight evidence unless it was convinced that flight had been established." *Id.* at 372. How-ever, the instruction in *Scott* failed to give any indication whatsoever that the jury must first find evidence of flight before considering it. *Id.* Here, while not at the beginning of the instruction, the jury was correctly instructed. In fact, the instruction given here included the clause "If you find evidence of flight or concealment" in direct response to our decision in *Scott.* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Comment to No. 2.44 (4th Ed. 2004).

While the 2008 revised instruction did move the language to the beginning of the instruction, this move was for clarification only. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Comment to No. 2.44 (6th Ed. 2008) ("The Committee did not intend to make any substantive change in the contents of the instruction."). Admittedly, the current formulation of the instruction puts more emphasis on the jury's role in first finding evidence of flight, and may prove to be clearer. Nevertheless, we are unaware of any cases—and Graham points us to none—where the court found the instruction used at Graham's trial erroneous; we decline to find error now. The flight instruction given at trial properly informed the jury that they must first find evidence of flight before weighing such evidence.

## VI. Conclusion

Because the testimony of McCray was sufficient to convict Graham, the admission of Fowler's statement of identification was not error, there was enough evidence to support a flight instruction, and that in-

---

**12.** The 2008 revised instruction reads "You have heard evidence that [name of defendant] fled or hid [after the [name the event]] [after being accused of a crime] [from the police]. It is up to you to decide whether s/he fled or hid. If you find that s/he did so, you may consider his/her fleeing or hiding as tending to show feelings of guilt. On the other hand, you may also consider that [name of defendant] may have had reasons to flee or hide that are fully consistent with innocence in this case." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.44 (6th Ed. 2008).

struction was properly worded, we find no error. Therefore, the judgment is

*Affirmed.*