*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CF-221

DENZEL BLOCKER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court of the
District of Columbia
(CF2-15164-17)

(Hon. Kimberly S. Knowles, Trial Judge)

(Argued February 7, 2020                    Decided October 8, 2020)

*Denise D. Green* for appellant.

*Ann M. Carroll*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Ryan Norman*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: A jury found appellant Denzel Blocker guilty of

unlawful possession of a firearm by a convicted felon (crime of violence) (FIP),[1]

---

[1] D.C. Code §§ 22-4503(a)(1), (b)(1) (2012 Repl.).

and possession of an unregistered firearm,[2] ammunition,[3] and a large-capacity ammunition-feeding device.[4] On appeal, Blocker contends that the trial court erred in relying on his prior robbery conviction to support the FIP charge; admitting the firearm in evidence; and improperly instructing the jury in several ways. For the reasons that follow, we affirm Blocker's convictions, although we remand the case for resentencing of the FIP conviction consistent with this opinion.

## I. Background Facts and Trial Proceedings

According to the government's evidence, on September 2, 2017, Metropolitan Police Department (MPD) Officers Nico Scott, Ramon Moe, and Lojocano,[5] assigned to the Narcotics Special Investigation Division (NSID), were working in the 4500 block of Quarles Street, Northeast. While in the area, Officer Scott noticed a man later identified as Blocker "ducking" between cars as if to avoid being seen. Blocker then got into a black Dodge Charger driven by a friend,

---

[2] D.C. Code § 7-2502.01(a) (2018 Repl.).

[3] D.C. Code § 7-2506.01(a)(3) (2018 Repl.).

[4] D.C. Code § 7-2506.01(b) (2018 Repl.).

[5] Officer Lojocano's first name is not in the record.

Deandre Belt, and the car "sped off at a high rate of speed."[6] Approximately ten minutes later, while scouting the area, Officer Scott spotted the Charger coming toward him in the 2100 block of Benning Road, Northeast. Officer Scott then made a U-turn onto the road in front of the oncoming Charger, in order to block it as his co-workers, driving a marked police car, were pursuing the Charger from behind, using lights and sirens. Blocked by Officer Scott's vehicle, the Charger came to a stop. Blocker jumped out of the front-passenger seat and ran up the hill leading to the 2300 block of G Street, Northeast.

Officers Scott and Moe ran up the hill after Blocker while other officers pursued the Charger after it sped off again. While the officers were chasing Blocker, he ran into a parked car and fell down. As Blocker started to fall, both officers saw Blocker reach with his right hand into the front of his pants, and Officer Scott saw him "toss a hard object" away. The officers then heard the sound of metal hitting and skidding on the pavement. Officers Scott and Moe both testified that the sound was consistent with the sound of a gun hitting the pavement. The officers caught up with Blocker, arrested him, and, while doing so,

---

[6] Mr. Belt testified that he picked up Blocker from Blocker's home to "run some errands" with him, and that while Mr. Belt was driving, his Charger was struck from behind by a police car, initiating the chase described below. Mr. Belt was the only witness that testified to this version of events.

both observed a handgun on the pavement within two or three feet from Blocker. Officer Moe secured the gun.

Trial began on December 12, 2017, and a jury found Blocker guilty on all counts two days later. On appeal, Blocker seeks reversal of his FIP conviction (and related charges) on the ground that: (1) the underlying predicate felony, robbery — on appeal while Blocker was tried and convicted — was later reversed. He also claims that the trial court erred in four other ways: (2) admitting the gun in evidence, (3) instructing the jury that the government did not have to provide forensic evidence to establish guilt, (4) providing other wrong instructions to the jury, and (5) rejecting Blocker's request to inform the jury of the defense theory of the case.

## II. Felon In Possession (FIP) Conviction

Blocker offers two arguments in contesting his FIP conviction. *First*, he argues that he was entitled to reversal because, after his FIP conviction, we overturned on appeal the felony (robbery) conviction on which his FIP conviction had been predicated. *Second*, Blocker maintains that even if the FIP conviction is affirmed, it should nonetheless be remanded for resentencing because enhancement

no longer was legally justified. Blocker, however, did not object at trial to use of his robbery conviction to establish an essential element of FIP or as a predicate for sentencing. Therefore, we review this conviction, including sentencing, for plain error.[7]

## A. The Conviction

The FIP statute prohibits any person from possessing a firearm if that person "[h]as been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[.]"[8] At the time of his arrest, Blocker had four felony convictions: robbery, receiving stolen property (over $1000), unauthorized use of a vehicle, and destruction of property (over $1000). Moreover, Blocker stipulated at trial that he had "previously been convicted of a crime punishable by a term of imprisonment exceeding one year." Thereafter, Blocker was convicted of FIP and

---

[7] *Malloy v. United States*, 186 A.3d 802, 814 (D.C. 2018) (permitting reversal only if there is "[1] 'error' that is [2] 'plain' (meaning 'clear' or 'obvious'), that [3] 'affects substantial rights,' and that, if not corrected, [4] would result in a 'miscarriage of justice' (meaning conviction of an innocent defendant) or otherwise would 'seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'" (quoting *Wooden v. United States*, 6 A.3d 833, 834 n.5 (D.C. 2010) (brackets in original)).

[8] § 22-4503(a)(1).

received an enhanced forty-month sentence based on his prior robbery conviction[9] then pending on appeal. Approximately six months after he was sentenced in this case, we reversed his robbery conviction.[10]

Blocker asks for reversal of his FIP conviction because the trial court used his robbery conviction to enhance his sentence, despite the fact that his robbery conviction, still pending appeal, was not final. The FIP statute, D.C. Code § 22-4503(a)(1), prohibits a person from possessing a firearm if that individual "[h]as been convicted in any court of a *crime* punishable by imprisonment for a term exceeding one year";[11] it does not require prior conviction of a *crime of violence*, such as robbery. Putting aside his robbery conviction, we note that Blocker had been convicted of three non-violent felonies, each of which could have been used to meet the FIP requirement of a prior felony conviction. Moreover, the indictment itself does not specify that Blocker had been convicted of a violent felony; it stated

---

[9] See *infra* Section II.B.

[10] *Blocker, et. al. v. United States*, No. 16-CF-388, Mem. Op. & J. (D.C. Aug. 21, 2018).

[11] § 22-4503 (a)(1) (emphasis added).

only that he had been convicted of "a crime."[12] Finally, the jury did not know that Blocker had been convicted of a robbery; it knew only that he had stipulated to conviction of "a crime punishable by a term of imprisonment exceeding one year." Accordingly, because any of Blocker's other three felonies would have satisfied the FIP requirement, the fact that his robbery conviction was reversed does not change the ultimate outcome; Blocker was not erroneously convicted of FIP — given that his sentence had not otherwise been contested at trial.

## B. The Sentence

Blocker argues that if his FIP conviction is affirmed, he is nonetheless entitled to a remand for resentencing because his invalid robbery conviction had been used to justify an "illegal" sentence.

The FIP statute states that a person who violates subsection (a)(1):

> shall be sentenced to imprisonment for not more than 10 years and shall be sentenced to imprisonment for a mandatory-minimum term of 1 year, unless she or he has

---

[12] The indictment charges: "On or about September 2, 2017, . . . Denzel Blocker, previously having been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, owned, kept, and had within his possession and control, a firearm." Mistakenly, Blocker states in his reply brief that "[t]he indictment and Information in this case reference a 'crime of violence.'"

a prior conviction for a *crime of violence* other than conspiracy, in which case she or he shall be sentenced to imprisonment for not more than 15 years and shall be sentenced to a mandatory-minimum term of 3 years.[13]

Following the jury's guilty finding, the trial court used Blocker's prior robbery conviction to sentence Blocker to an enhanced forty months. At the time of sentencing, this was not necessarily erroneous. We had not yet reversed his robbery conviction; Blocker therefore still had "a prior conviction for a crime of violence other than conspiracy,"[14] and the trial court understandably considered itself required (absent objection to the contrary) to sentence Blocker, at the very least, to the mandatory minimum of three years.

Blocker claims, however, that even if we do "not reverse," he is entitled to resentencing because (1) "the underlying predicate felony, robbery, was reversed on direct appeal," and (2) "the sentencing court considered a prior invalid conviction, robbery, that was unconstitutionally secured."

---

[13] § 22-4503(b)(1) (emphasis added).

[14] *Id.*

Blocker offers no convincing authority, and elaborates no further rationale, establishing his ultimate argument that his FIP conviction had been "unconstitutionally secured."[15]  His lesser, more elaborate argument is a statutory contention that, to justify an enhanced sentence based on a "prior conviction for a crime of violence," the FIP statute presupposes reliance on a prior "final" conviction.  According to Blocker, FIP "cannot be interpreted" to permit enhancement of sentences for "persons whose predicate convictions have been vacated or reversed on appeal" or — like Blocker's robbery conviction — were "pending direct review" when employed to enhance a sentence.  The federal cases on which Blocker relies, however, expressly requiring finality of a prior conviction

---

[15]  In making his constitutional claim, Blocker cites only one case:  an Illinois intermediate appellate court decision reversing a conviction predicated on a sentence enhancement derived from a pending conviction later vacated as unconstitutional. *See People v. Cavette*, 118 N.E.3d 699 (Ill. App. Ct. 2018).  This non-binding decision from Illinois is inapposite.  The predicate felony in *Cavette* was based on a statute that was declared "facially unconstitutional," *id.* at 703-06, and therefore the predicate felony conviction was void at the outset. Here, however, Blocker's robbery conviction was reversed because of misjoinder, not a constitutional deficiency with the statute.  Finally, in his reply brief, Blocker states that the constitutional violations he has in mind are the Fifth Amendment right to due process and the Sixth Amendment right to a fair trial.  He offers no supportive reasoning, however, and we perceive none.

under differently worded felon-in-possession statutes, provide no guidance as to how our FIP statute must be read.[16]

In any event, we need not resolve Blocker's FIP contention because he offers still another argument for resentencing that we find persuasive: the trial court failed to follow a mandatory sentencing procedure. He stresses that, when considering a sentence enhancement, the prosecutor must file an "information" pursuant to D.C. Code § 23-111(a)(1) (2012 Repl.) stating "in writing the previous convictions to be relied on," and then must serve a copy on the defendant or counsel. Thereafter, the trial court, "before pronouncement of sentence," must also satisfy two requirements pursuant to § 23-111(b): [1] ask the defendant "whether he affirms or denies" the convictions "alleged in the information," and [2] inform the defendant that "any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."

---

[16] *See, e.g.*, *United States v. Lippner*, 676 F.2d 456, 466-67 (11th Cir. 1982) (interpreting enhancement provision of 21 U.S.C. § 841(b)(1)(A), mandating additional penalties where the defendant commits a federal drug offense "after one or more prior [federal drug law] convictions . . . *have become final*" and holding that the words "have become final" requires exhaustion of "all avenues of direct attack") (emphasis added); *United States v. Meraz*, 998 F.2d 182, 184 (3d Cir. 1993) (same); *Williams v. United States*, 651 F.2d 648 (9th Cir. 1981) (same; holding exhaustion of appellate remedies includes petitions for writ of *certiorari*); *United States v. Allen*, 566 F.2d 1193, 1195 (3d Cir. 1977) (holding "final" language in statute meant conviction was not subject to direct appellate review).

Blocker maintains that the court failed to satisfy these two requirements and that its failure to do so entitles him "to have his case remanded for re-sentencing."[17]

The government responds to Blocker's resentencing demand by arguing that Blocker had failed to "object to the use of his robbery conviction" for enhancement of his sentence, had "not shown good cause for his failure" to do so, and thus has "waived" the argument. The government premises waiver on an alleged "stipulation at trial that satisfied the prior-conviction element" and, further, on an "explicit agreement at sentencing that the enhanced mandatory-minimum term applied." The government does not elaborate its support for this vague waiver argument beyond reliance on the court-initiated colloquy with counsel immediately before sentencing: "Mr. Blocker has a prior crime of violence. So . . . his guideline range is 30 to 72 months, but there is a 36 month mandatory minimum. Do both counsel agree with those calculations?" Both counsel replied "yes."

---

[17] Blocker did not expressly make his § 23-111(b) argument until his reply brief. However, by his citing § 23-111 generally in his opening brief, the government's response citing § 23-111 (a) and (c) in its brief, and the government's apparently basing its waiver argument on § 23-111(b), we are satisfied that the government was fully aware of, and responded to, all applicable provisions of § 23-111. Thus, we need not penalize Blocker for failing to raise § 23-111(b) in his opening brief. *Cf. Stockard v. Moss*, 706 A.2d 561, 566 (D.C. 1997) ("It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief.").

Whatever ground this colloquy was intended to cover — and we assume that the government intended the colloquy to satisfy § 23-111(b) or to waive it — that colloquy did not track the language of § 23-111(b). And in any event, even if the colloquy could be interpreted to have covered the first requirement (asking Blocker to affirm or deny a qualifying previous conviction), it stretches the discussion too far to say that the court satisfied the second requirement: to inform Blocker that any "challenge to a previous conviction" must be made "before sentence," otherwise an "attack" thereafter would be foreclosed. Contrary to the government's argument, therefore, we cannot say for sure that a "stipulation" or "explicit agreement" at sentencing satisfied the trial court's § 23-111(b) obligation.

When it comes to sentence enhancement, § 23-111(b) imposes an initial burden on the trial court, not on the defendant, to announce and establish the ground rules for a defense challenge. We emphasized this allocation of responsibility in *Sanders*: "Because enhanced sentencing involves imprisonment for extended periods of time, we have repeatedly mandated strict compliance with the procedures set forth in the [D.C.] code."[18] We also stressed in *Sanders* that "the 'touchstone' of judicial compliance with § 23-111 is notice to the

---

[18] *Sanders v. United States,* 809 A.2d 584, 601 (D.C. 2002) (quoting *Boswell v. United States*, 511 A.2d 29, 31 (D.C. 1986)).

defendant."[19]  But we added that, even "when such notice is given," harmless error, precluding "remand for resentencing," is limited to "technical violations."[20]  It may be true here that both the court and the parties (represented by well informed counsel) had in mind, as the government puts it, that Blocker stipulated away any § 23-111(b) argument.  But it is equally possible, indeed more likely, that the important purpose of that two-pronged provision was unfulfilled, especially the required warning about the time limitation on any further "attack" on the enhanced sentence.  No mere technical violation is at issue here.  We therefore must remand the case for resentencing premised on reversal of the unlawful robbery conviction that underlay Blocker's enhanced sentence.

### III.  Admission of the Handgun in Evidence

Blocker next claims that the trial court erred by admitting the handgun in evidence because "the government failed to prove beyond a reasonable doubt" that it "was the same gun allegedly recovered from the crime scene[.]"  The trial court has broad discretion in determining the admissibility of physical evidence, which

---

[19]  *Id.*

[20]  *Id.* (quoting *Logan v. United States*, 591 A.2d 850, 852 (D.C. 1991)).

we review for abuse of discretion.[21]  "[W]hen physical evidence is in the hands of the government, the presumption arises that it has been handled properly."[22] Moreover, any gaps in the chain of custody "normally go to the weight of the evidence rather than its admissibility."[23]  Furthermore, "once the government has established an unbroken chain of custody as a matter of reasonable probability, [the] defendant must present evidence that the police tampered with or otherwise mishandled the evidence in order to succeed with his challenge."[24]

Here, the trial court did not abuse its discretion by admitting the handgun in evidence; the government established an unbroken chain of custody.  *First*, Officer Scott testified that, as he was arresting Blocker on September 2, 2017, he "observed in plain view a black handgun" on the pavement near Blocker.  Officer Moe, who arrived seconds after Officer Scott to help arrest Blocker, also testified that he had seen the gun next to Blocker.

---

[21]  *See Wonson v. United States*, 144 A.3d 1, 3 (D.C. 2016); *Brooks v. United States*, 993 A.2d 1090, 1094 (D.C. 2010).

[22]  *Plummer v. United States*, 43 A.3d 260, 272 (D.C. 2012) (internal quotation marks and citation omitted).

[23]  *Brooks*, 993 A.2d at 1094 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (internal quotation marks omitted)).

[24]  *Plummer*, 43 A.3d at 272 (internal quotation marks and citation omitted).

*Second*, Officer Scott testified that the gun "was secured" and "taken back to our branch where it was processed by the crime scene technician." Officer Moe expanded on this testimony, stating that he had taken a picture of the gun at the scene of Blocker's arrest and placed the gun in a paper bag to preserve the evidence. Officer Moe then took the gun in the bag to the NSID[25] at the 2850 New York Avenue, Northeast station, where Officers Scott and Lojocano were present. Moe believed that the gun was transferred over to "mobile crime," which had "responded to the scene" (meaning the station) "to recover the weapon."

*Third*, Officer Johnson, a crime scene technician, testified that he was the one who had gone to the "narcotics office" on September 2 to retrieve the handgun. He further testified that Officer Lojocano had "brought out a 45 caliber weapon to me and I recovered it from him." Officer Johnson also testified that he had placed the gun in an "evidence envelope" marked with his name, badge number, and the location where the gun was originally recovered — in this case, the 2300 block of G Street, Northeast. He then took the gun "back to [his] lab[,] . . . placed [the gun] in a property envelope, seal[ed] it, and forward[ed] it to the firearms examination section." *Finally*, Officer Johnson confirmed in court that the gun the government

---

[25] Narcotics Special Investigation Division.

offered in evidence was the gun he had retrieved from the NSID on September 2, 2017.

Taken together, the steps to which these three officers testified established a reasonable probability[26] that the gun found next to Blocker was the same gun introduced in court. Indeed, there was eyewitness testimony confirming each of the four steps specified above. Presumably, Officer Lojocano also could have been called to testify that he had given the gun to Officer Johnson. But, in light of the eyewitness testimony confirming Officer Lojocano's actions, his testimony was unnecessary to establishing the chain of custody. As we have said, "[t]o provide sufficient proof, the government need not 'call to the stand every witness who may have handled a piece of evidence[.]'"[27]

In light of the forgoing testimony, and as Blocker has not shown credible evidence that the gun was tampered with or otherwise mishandled, Blocker has not

---

[26] See *supra* note 24 and accompanying text.

[27] *Wonson*, 144 A.3d at 14 (Easterly, J., concurring) (quoting *United States v. Mejia*, 597 F.3d 1329, 1335 n.4 (D.C. Cir. 2010)).

rebutted the presumption that the government properly handled the evidence.[28] There was no error in admission of the handgun.

## IV. Jury Instructions

Blocker makes several arguments alleging trial court error when instructing the jury. If the defense objects to a jury instruction at trial, we review the trial court's ruling for abuse of discretion.[29] The "central question for this court is whether [the instruction] is an adequate statement of the law, and whether it is supported by evidence in the case."[30] Absent objection to the instruction, "a conviction may be reversed only for plain error."[31]

---

[28] *See Plummer*, 43 A.3d at 272.

[29] *Koonce v. District of Columbia*, 111 A.3d 1009, 1022 (D.C. 2015) (internal quotation marks and citations omitted).

[30] *Graham v. United States*, 12 A.3d 1159, 1166 (D.C. 2011) (internal quotation marks and citations omitted).

[31] *McClain v United States*, 871 A.2d 1185, 1192 (D.C. 2005) (internal quotation marks and citations omitted); *see also* Super. Ct. Crim. R. 30; *supra* notes 7 & 8.

## A. The DNA Evidence Instruction

Blocker contends that the trial court erred when instructing the jury that the government was not required to present scientific evidence, such as DNA or fingerprints, in order to prove its case (the "no duty" instruction). During *voir dire*, the trial court explained to the venire that the court would "be instructing the jury that in a criminal trial there is no requirement that the [g]overnment present forensic or scientific evidence such as DNA or fingerprints in order for them to meet their burden. They still have the burden beyond a reasonable doubt." Later, the trial court read to the empaneled jury the final instructions before closing arguments, again saying "[t]here is no requirement that the [g]overnment present forensic or scientific evidence, such as DNA evidence or fingerprints[,] in order to prove their case." The court added that "[f]orensic evidence or the lack thereof is a factor that the jury may consider in making its determination."[32] Blocker challenges both "no duty" instructions.

---

[32] There is a dispute as to whether defense counsel preserved his objection to the trial court's "no duty" *voir dire* instruction. We need not decide whether that objection was preserved, however, because we conclude that both of the trial court's "no duty" instructions were harmless error, as explained below.

We agree that the trial court erred when including the "no duty" instruction during *voir dire* and in final instructions to the jury, because nothing the defense had done triggered any legitimate need for those instructions favorable to the government. The purpose of the "no duty" instruction is "to counter an inference," unfairly favorable to the defense, that scientific evidence which "could have been — but was not — collected and presented to the jury" by the prosecution "would have undermined the government's case or been favorable to the defense."[33] Thus, for the corrective instruction to be relevant, "there must have been evidence that the police failed to gather available [forensic] evidence or defense argument to that effect."[34] Such evidence, unfavorable to the government, was not introduced here.

Officer Johnson testified that the handgun had been sent for forensic testing. But instead of arguing that the police deliberately or negligently failed to test the gun for fingerprints or DNA, counsel's closing argument for Blocker used the mere absence of fingerprint or DNA evidence to Blocker's advantage. It focused the jury's attention on "a gun that [the government had] no DNA match from, no fingerprint match, no other type of forensic evidence that puts the gun in Mr.

---

[33] *Wheeler v. United States*, 930 A.2d 232, 238 (D.C. 2007).

[34] *Id.* at 238; *see also Brown v. United States*, 881 A.2d 586, 594 (D.C. 2005).

Blocker's hand or against his skin." Accordingly, without any claim of government deficiency, "there was no need for an instruction to counter an unfounded inference" of government neglect.[35] Thus, by giving the "no duty" instruction — that the government had "no requirement [to] present forensic or scientific evidence" — the trial court ran the risk of confusing the jury by undermining the ultimate, overall instruction that "reasonable doubt" can be found "based upon the evidence *or the lack of evidence in the case*."[36] In doing so, the trial court erred.

We conclude, however, that the error was harmless. Both while cross-examining Officer Johnson and later during closing argument, Blocker emphasized to the jury that the government did not produce forensic evidence tying Blocker to the handgun. These tactics supported Blocker's main argument that the gun was not his. For that reason we are confident that the "no duty" instruction "did not undermine the defense[,] because defense counsel was able to argue that the lack of corroborative evidence weakened the government's case."[37] Nor did the government compound the error in closing; it did not remind the jury that the

---

[35] *Wheeler*, 930 A.2d at 239.

[36] *Id.* (internal quotation marks and citation omitted).

[37] *Brown*, 881 A.2d at 595.

government had no duty to produce forensic evidence of Blocker's guilt.[38]  Under these circumstances, the "no duty" instructions were unlikely to have "substantially swayed" the jury's judgment of guilt.[39]  Therefore, the trial court's error was harmless.

## B.  The Proposed "Defense Theory" Instruction

Blocker next argues that the trial court erroneously denied his request to include a defense theory of the case in the jury instructions.  The court asked Blocker if he wanted to include a defense theory in the instructions, to which Blocker's counsel replied:  "Some judges don't allow this, but the defense theory would be that — the defense theory is that the Government has not proved their case beyond a reasonable doubt."  The trial court responded:  "I think I fall into the category of those [judges] who don't allow that.  If it's a factual thing, I think the defense theory of the case is really supposed to be facts.  But just that they haven't proven their case, that's something obviously you can argue."

---

[38]  *See id.*

[39]  *Id.*; *see also McFerguson v. United States*, 870 A.2d 1199, 1205 (D.C. 2005).

"[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."[40] However, "a trial judge . . . retains discretion to decide the form and wording of the instruction."[41] Moreover, "[a]s a general rule, the refusal to give an instruction requested by a defendant is reversible error only if the instruction . . . was not substantially covered in the charge actually delivered to the jury[.]"[42] Furthermore, "[i]n determining whether an instruction is erroneous, we view the instructions given to the jury as a whole."[43] Because Blocker did not object to the trial court's denial of his proposed defense-theory instruction, we review the claim for plain error.[44]

Although the instruction was not expressly included, as such, in the trial court's final instructions to the jury, those instructions reminded the jury numerous times that the government had to prove Blocker's guilt beyond a reasonable doubt.

---

[40] *Holloway v. United States*, 25 A.3d 898, 902 n.6 (D.C. 2011) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

[41] *Id.* at 903 (internal quotation marks and citations omitted).

[42] *Id.*

[43] *Wheeler*, 930 A.2d at 244 (internal citation omitted).

[44] See *supra* notes 7 & 8 and accompanying text.

Because the substance of Blocker's requested instruction was "substantially covered in the charge actually delivered to the jury," the trial court did not err in denying Blocker's request.[45]

## C. Closing Argument

Blocker alleges prosecutorial misconduct in the government's closing argument, when the prosecutor: (1) posited that defense counsel might suggest, in closing, that the police had planted the gun, and then (2) proceeded to rebut that theory. Blocker argues that the prosecutor "creat[ed] his own defense theory of the case" with "no evidentiary basis," and then refuted it, forcing defense counsel "to rebut the prosecutor's claim." Whereupon, says Blocker, to his severe prejudice, "the prosecutor challenged defense counsel's integrity and proposed that defense counsel was lying to the jury when defense counsel claimed his defense was not a 'police plant.'" The question, then, is whether the prosecutor's gun-planting intimations amounted to misconduct.

---

[45] *Blades v. United States*, 200 A.3d 230, 243 (D.C. 2019); *see also Gray v. United States*, 549 A.2d 347, 351 (D.C. 1988) ("When we have rejected a claim that a certain defense-requested instruction should have been given, we have done so . . . because the instructions which the court actually gave adequately presented the defense theory. . . .").

"When evaluating a claim of improper prosecutorial argument, we first determine whether or not the challenged argument was improper."[46] If the argument was improper, "we then determine whether or not reversal is warranted, considering: (1) the gravity of the improper comments; (2) their relationship to the issue of guilt; (3) the effect of any corrective action by the trial judge; and (4) the strength of the government's case."[47] As there was no objection at trial, we again review Blocker's contention for plain error.[48] We find none here.

In his own closing in response to the prosecutor, defense counsel denied he was arguing that the gun had been planted; he argued instead that someone else may have seen the police chasing Blocker and tossed the gun onto the ground. Alternatively, he added:

> So you've got this fairly heavy sharp edged object that the police want you to believe he pulled from his pants and threw to the ground. I'm not going to suggest that the police officer planted that gun there but I'm going to say to you when evaluating the credibility of the police just remember they have a job to do. They're looking for guns."

---

[46] *Blades*, 200 A.3d at 243 (internal quotation marks and citation omitted).

[47] *Id.*

[48] See *supra* notes 7 & 8 and accompanying text.

Thereafter, in his rebuttal closing argument, the prosecutor responded to counsel's intimation of police culpability by taking the jury through the evidence to show that no one else was in the vicinity of the police and Blocker. Referencing video footage from the "body worn camera" on a police officer, the prosecutor emphasized that there was "no one else around" when the police were chasing and arresting Blocker, and that by process of elimination "the defense actually is saying that the police planted that gun."

A prosecutor is limited to making "reasonable comments on the evidence" and to urging only "such inferences from the testimony as will support the theory of the [government's] case."[49] Arguably, therefore, the prosecutor may have overreached in speculating before the jury that Blocker might be arguing that the police had planted the gun at the scene of arrest — probably a speculation that defense counsel could not reasonably have ignored in his rebuttal ("The police . . . have a job to do. They're looking for guns"), followed by the government's prejudicial response. On the other hand, there was no objection to the prosecutor's argument, and we cannot say there was plain error, if only because the

---

[49] *Turner v. United States*, 26 A.3d 738, 743 (D.C. 2011) (internal quotation marks and citations omitted).

government's case undoubtedly was strong and the prosecutor's argument was nothing close to a grave impropriety on this record.[50]

## D. The Impeachment Instruction

Finally, Blocker contends that the trial court improperly delivered to the jury the written instruction for impeachment by a prior criminal offense of a testifying *defendant* ("impeachment by crime — defendant") rather than the written instruction for impeachment by a prior criminal offense of a testifying *witness* ("impeachment by crime — witness"). The parties stipulated as to Blocker's prior conviction for purposes of the FIP statute, but Blocker argues that the erroneous, written instruction allowed the jury to use this stipulation to evaluate his — the "defendant['s]" — credibility or to "improperly infer he was in possession of a weapon." The government deflects the argument by disputing that the instructions included in the record on appeal were the actual instructions given to the jury. Because Blocker acknowledges that he did not object at trial, we review for plain error.[51]

---

[50] See text accompanying *supra* note 47.

[51] See *supra* notes 7 & 8 and accompanying text.

We need not decide whether the trial court erred by providing the wrong instruction to the jury, for even if there was error it was not "plain error." Before jury deliberations began, the trial court correctly read to the jury the "impeachment by crime — witness" instruction as it related to Blocker's witness. During deliberations, the jury never sent a note to the judge indicating confusion over the instructions. Most importantly, Blocker never took the stand, a fact the trial court reminded the jury of while reading the instructions. Indeed, if the written "impeachment by crime — defendant" instruction was accidentally given to the jury during deliberations, the very terms of that instruction precluded the jury from considering it because the instruction would apply only in evaluating Blocker's "credibility as a witness" — which he was not. "We recognize, as we have repeatedly said, that jurors are presumed to follow instructions."[52] Accordingly, we conclude that any potential trial court error attributable to inclusion of the instruction was not "plainly" so, and in any event surely did not affect Blocker's "substantial rights."[53]

---

[52] *Tann v. United States*, 127 A.3d 400, 459 (D.C. 2015).

[53] *See Malloy* 186 A.3d at 802.

\*\*\*\*\*

For the foregoing reasons, Blocker's convictions are affirmed, although we remand the case for resentencing of the FIP conviction consistent with this opinion.

*So ordered.*